UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x
Gershon JACOBSON, on behalf of himself
and other similarly situated

                Plaintiff,

    -against-                              MEMORANDUM AND ORDER
                                                  04 - CV - 3268 (ILG)

HEALTHCARE FINANCIAL SERVICES,
INC.,
                Defendant.

-------------------------------------------------x

GLASSER, United States Senior District Judge

## **INTRODUCTION**

In this putative class action Gershon Jacobson ("Plaintiff") alleges that Healthcare Financial Services ("Defendant") sent a debt collection letter that violated 15 U.S.C. § 1692g(a)(3) of the Fair Debt Collection Practices Act ("FDCPA"). Before the Court is Defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim, as well as a request for costs, disbursements, attorney's fees and sanctions against Plaintiff and/or Plaintiff's counsel for instituting a frivolous lawsuit.

## **FACTS**

On or about July 13, Defendant mailed a letter to Plaintiff demanding payment of a $492.00 debt. The letter, in its entirety, reads as follows:

> This account has been assigned to our office for collection.
>
> If your payment or notice of dispute is not received in this office within 30 days, we shall recommend further action be taken against you to collect this outstanding balance.

> Note: that we have the right to report this debt to the appropriate credit bureau which might have a negative impact on your credit rating. Make your check or money order payable to Healthcare Financial Services.
>
> Please read below. This communication is an attempt to collect a debt and any information obtained will be used for that purpose.
>
> In compliance with the provisions of paragraph 809 of the Consumer Credit Protection Act, Amendments, you are hereby notified of the following:
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid.
>
> If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification
>
> If you request from this office in writing, within 30 days after receiving this notice, this office will provide you with the name and address of original creditor, if different from the current creditor.

## **DISCUSSION**

### **I.     Standards of Review**

Defendant seeks dismissal under Fed. R. Civ. Proc. 12(b)(6) or, in the alternative, summary judgment. See, e.g., Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 573 (2d Cir.2005). Although Defendant's motion is properly construed as a motion for judgment on the pleadings under Rule 12(c) rather than a motion for failure to state a claim under Rule 12(b)(6), the standard for conversion to Rule 56 is the same under either rule. Compare Aetna Cas. and Sur. Co., 404 F.3d at 573 (holding that it is within the Court's discretion to convert a 12(b)(6) motion to summary judgment "when matters outside the pleadings have been presented and accepted by the Court, and where all parties have been given a 'reasonable opportunity' to present materials

2

pertinent to the motion's disposition.") with Sheppard v. Beerman, 94 F.3d 823, 828 (2d Cir.1996) (holding that a Rule 12(c) motion may be converted to a motion for summary judgment "if the court chooses to consider evidence extrinsic to the complaint and answer . . . [E]ach party shall be given a reasonable opportunity to present all material pertinent to a summary judgment determination.). See also In re G. & A. Books, 770 F.2d 288 (2d Cir.1985), cert. denied, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986) (essential inquiry in converting Rule 12 motion to dismiss into a Rule 56 motion for summary judgment is whether parties reasonably recognize the possibility of conversion or were deprived of a reasonable opportunity to meet facts outside the pleadings.). The parties acknowledge that the pertinent facts in this case are found in the letter Defendant sent to Plaintiff and reasonably anticipate that the Court might grant judgment based upon the parties' submissions.

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See also Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986). A genuine issue of material fact exists when there is sufficient evidence favoring the nonmoving party such that a jury could return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). To defeat a supported motion for summary judgment, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.Proc. 56(e).

## II. The Fair Debt Collection Practices Act

The enacted purpose of the Fair Debt Collection Act is equally to "eliminate abusive debt collection practices," "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," and "to promote consistent State action." 15 U.S.C. § 1692(e). In separate subsections, the statute regulates the acquisition of information about a debtor and communications in connection with debt collection, see §§ 1692b, 1692c; prohibits harassment or abuse, the use of false or misleading representations and unfair practices by debt collectors, see §§ 1692d, 1692e, 1692f; grants a debtor subject to third-party collection efforts the right to have the debt validated, see § 1692g; and provides for a private right of action and civil liability as well as authorizes enforcement and reporting by the Federal Trade Commission. See §§ 1692k, 1692*l*, 1692m.

In analyzing claims brought pursuant to the Fair Debt Collections Act, it is well-settled that this Court must employ a "least sophisticated consumer" standard. See, e.g., Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir.2005) (citing Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2d Cir.1993) (canvassing other Circuits)). See also Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir.1996). The least sophisticated consumer standard was imported from Federal Trade Commission Act jurisprudence and grounded in the conclusion that the FDCPA, like other consumer-protection laws, was "not made for the protection of experts, but for the public – that vast multitude which includes the ignorant, the unthinking and the credulous." Clomon, 988 F.2d at 1318 (citing Charles of the Ritz Distributors Corp. v. Federal Trade Commission, 143 F.2d 676, 679 (2d Cir.1944) (quoting Florence Manufacturing Co. v. J.C. Dowd & Co.,

178 F.73, 75 (2d Cir.1910)). Notwithstanding a certain logical incoherence to determining how the 'least sophisticated consumer' would react to any conduct,[1] the least sophisticated consumer standard is an objective standard which measures the questioned conduct "by how the 'least sophisticated consumer' would interpret [it]," Russell, 74 F.3d at 34, but discards "unreasonable misinterpretations." Clomon, 988 F.2d at 1319.[2] The norm is crafted mindful that the statute "(1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." Id. at 1320.

Though it has not directly held as much, the Second Circuit has characterized the FDCPA as a "strict liability" statute because any act that violates the regulations of the FDCPA as measured by the least sophisticated consumer standard gives rise to liability, regardless of whether the recipient of the letter suffered any actual damage as a result. See Russell, 74 F.3d at 33 (observing that the act "imposes strict liability."); Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 63 (2d Cir.1993) (same); Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307 (2d Cir.2003) ("The FDCPA . . . permits the

---

[1] The Seventh Circuit, adopting an "unsophisticated" rather than "least sophisticated" consumer standard noted this incoherence, observing that "the least sophisticated consumer is not merely 'below average,' he is the very last rung on the sophistication ladder . . . Even assuming that he would be willing to do so, such a consumer would likely not be able to read a collection notice with care (or at all), let alone interpret it in a reasonable fashion." Gammon v. GC Services Limited Partnership, 27 F.3d 1254, 1257 (7th Cir.1994). Similarly, one might posit that literally any statement, even something as benign as "Please pay the debt that you acknowledge you owe," could befuddle and confuse this least sophisticated creature. A fortiori the importance of importing a reasonableness standard into the analysis.

[2] The logical significance of an "unreasonable misinterpretation" as opposed to a mere "unreasonable interpretation" is not illuminated in Clomon. Suffice to say that what constitutes the "unreasonable misinterpretation" of a "least sophisticated consumer" is a bewildering standard leaving room for myriad reasonable and unreasonable interpretations.

recovery of statutory damages up to $1,000 in the absence of actual damages."); Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir.1998) ("All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling."). It may be helpful in the main to conceive of the statute as imposing strict liability against debt collectors, even though such a standard is not to be found in the statute. But at the outer bounds of the statute's application, strict liability damages are inconsistent with both the statutorily authorized affirmative defense of § 1692k(c)[3] and the statute's co-equal purpose of protecting scrupulous debt collectors. When a defendant has unintentionally made only a technical mistake, cognizable only under a standard that indulges the hypothetical, logically fallacious, least sophisticated consumer, see supra n.1., the misapplication of statutory damages based on strict liability tort principles can give rise to questionable awards. This may have a punitive effect, despite the absence of the egregiousness typically associated with punitive damages. Cf. Parker v. Time Warner Entertainment Co., L.P., 331 F.3d 13, 22 (2d Cir.2003) (discussing "the effects of combining a statutory scheme that imposes minimum statutory damages awards . . . with the class action mechanism that aggregates many claims.").

---

[3] A debt collector may interpose as an affirmative defense that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Though it has been suggested in this Circuit that a mistake of law is not excused by this defense, see Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir.1989), the Circuit has not directly addressed whether the intent requirement for the § 1692k(c) defense requires the defendant to establish an absence of general or specific intent. On that point, this Court would find persuasive the reasoning in Johnson v. Riddle, 443 F.3d 723, 728 (10th Cir.2006), which concluded that "the only workable interpretation of the intent prong of the FDCPA's bona fide error defense is that a debt collector must show that the violation was unintentional, not that the underlying act itself was unintentional." This interpretation is inconsistent with a strict liability regime.

The interaction of the least sophisticated consumer standard with the presumption that the FDCPA imposes strict liability has led to a proliferation of litigation in this District. A cursory examination of the court's docket demonstrates an exponential growth in litigation under the statute from four cases in 2002, to nine cases in 2003, to twenty-two cases in 2004, to ninety-two cases in 2005 to eighty-five cases in only the first five months of this year. In the time during which this case has been under consideration, this Plaintiff has filed another case under the statute, on similar facts under a similar theory. See Jacobson v. R.T.R. Financial Services Inc., 05-cv-04216 (filed Sept. 6, 2005). There is one family with literally scores of claims filed on their members' behalf.[4] Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled. The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." Id. Rather,

---

[4] See, e.g., Spira et al v. Business Office Systems & Solutions, Inc., 05-CV-00622 (filed Jan. 8, 2006 by Bella Spira); Spira v. Paul Michael Marketing Associates, Inc., 04-CV-00040 (filed Jan. 7, 2004 by Devorah Spira); Spira v. Professional Claims Bureau, Inc., 06-CV-00820 (filed Feb. 24, 2006 by Eliezer Spira); Spira v. Conta, 05-CV-05337 (filed Nov. 14, 2005 by Gitel Spira); Spira v. Retrieval Masters Creditors Bureau, Inc., 06-CV-0067 (filed Jan. 5, 2006 by Joseph Spira); Spira v. Ashwood Financial, Inc. 04-CV-04607 (filed Oct. 26, 2004 by Miriam Spira); Spira v. CBC Companies, Inc., 06-CV-01210 (filed Mar. 17, 2006 by Nathan Spira); Spira v. Business Office Systems & Solutions, Inc., 05-CV-00622 (filed Feb. 3, 2005 by Shulem Spira).

the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.

The statute need not be applied in this manner; and indeed, this Circuit has recognized that courts should not countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray. In <u>Russell v. Equifax A.R.S.</u>, one of the most often quoted opinions on the 'least sophisticated consumer' standard, the Circuit emphasized that "the test is how the least sophisticated consumer-one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer-understands the notice he or she receives." <u>Russell</u>, 74 F.3d at 34. This understanding of the least sophisticated consumer standard points away from closely parsing a debt collection letter like a municipal bond offering and towards a common sense appraisal of the letter.

It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and – rather than simply pay what he owes – repairs to his lawyer's office to vindicate a perceived "wrong." "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." <u>Watts v. State of Ind.</u>, 338 U.S. 49, 52, 69 S.Ct. 1347, 1349 (U.S. 1949).

Without doubt, the broadly sweeping regulations of the statute protect consumers from abusive debt collection practices. If, however, the enacted purpose of

8

the statute is equally "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," 18 U.S.C. 1692(e), and the courts are to give life to the admonition in <u>Clomon</u> that the standards are intended to protect collectors against "bizarre or idiosyncratic interpretations of collection notices,"988 F.2d at 1320, the statute must be applied with some circumspection.

### III.    Plaintiff's Claim

15 U.S.C. § 1692g requires debt collectors to issue a "validation notice," either in the initial communication with a consumer or within five days of that initial communication, that informs the consumer of certain rights including the right to make a written request for verification of the debt and to dispute the validity of the debt.  <u>See</u> 15 U.S.C. § 1692g(a).  Only if "a [validation] notice . . . contains language that overshadows or contradicts other language informing a consumer of her rights" does the notice violate the FDCPA.  <u>Miller v. Wolpoff & Abramson, L.L.P.</u>, 321 F.3d 292, 309 (2d Cir.2003) (quotations omitted).  A validation notice that tracks the language of the statute is presumed to fulfill the statutory requirements.  <u>Greco v. Trauner, Cohen & Thomas, L.L.P.</u> 412 F.3d 360, 365-66 (2d Cir.2005)."  It is overshadowing or contradictory "if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." <u>Id.</u> (citing <u>Savino v. Computer Credit, Inc.</u>, 164 F.3d 81, 85 (2d Cir.1998)).

In this case, the validation notice contained in the final three paragraphs of the letter closely tracks the language of 15 U.S.C. § 1692g(a), and is thus presumptively

valid.[5] Plaintiff contends, however, that the letter violates the statute in two ways. First, Plaintiff objects to Defendant's demand for payment within 30 days. Second, Plaintiff asserts that the statute-tracking language is overshadowed by the second paragraph, in which Defendant stated "[i]f your payment <u>or</u> notice of dispute is not received in this office within 30 days, we shall recommend further action . . ." (emphasis supplied). According to Plaintiff, this statement might lead the least sophisticated consumer to believe that he has 30 days from the date the letter was sent, rather than 30 days from the receipt of the letter, to dispute or pay the claim.

Plaintiff's first objection is ill-founded. Neither of the two cases cited by Plaintiff supports his conclusion that the collection letter he received violates the statute by demanding payment or a notice of dispute within 30 days. In both <u>Chauncey v. JDR Recovery Corp.</u>, 118 F.3d 516 (7th Cir.1997) and <u>Swift v. Maximus, Inc.</u>, 2004 WL 1576618 (E.D.N.Y.), the debt collector set forth conflicting statements, first demanding payment in full within 30 days, and only in separate language acknowledging that the consumer had the right to dispute the debt. See <u>Chauncey</u>, 118 F.3d at 518 ("Unless we receive a check or money order for the balance, in full, within thirty (30) days from receipt of this letter, a decision to pursue other avenues to collect the amount due will be

---

[5] 15 U.S.C. § 1692g(a) requires that the debt collection letter include:
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

made.  Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid."); Swift, 2004 WL 1576618 at *3 ("The crucial sentence in the instant letter declares: 'Payment in full of this debt must be received within 30 days after the date of this notice to avoid further collection activities.' The reverse side contained the validation notice.").  In this case, Defendant issued a disjunctive demand, seeking either payment or notice of dispute within 30 days.  Such a demand for immediate payment does not conflict with the statute when the Defendant also gives Plaintiff notice of his right to dispute the claim as an alternative to paying the debt in full.  Cf. Savino, 164 F.3d at 86 (Defendant's "request for immediate payment did not, standing alone, violate the FDCPA.").

     Plaintiff's second contention, that the disputed statement improperly "shortens the thirty-day statutory period by demanding that payment be made within thirty-days, which could be construed by the least sophisticated consumer as being from the date of the letter, as opposed to the statutory thirty-day period which only begins from the date of the actual receipt of the letter," similarly fails.  (Pl. Mem. at 6 (citing Cavallaro v. Law Office of Shapiro & Kleinman, 933 F.Supp. 1148 (E.D.N.Y.1996); McStay v. I.C. Systems, 308 F.3d 188 (2d Cir.2002)).

     Cavallaro held that a validation notice that "stated that Plaintiff should dispute the debt 'within thirty (30) days from the date of this notice' rather than, as mandatorily required by the statute, within 30 days of receipt of the notice" violated the statute.  Cavallaro, 933 F.Supp. at 1154 (emphasis supplied).  Nothing in that case spoke to a demand for payment within thirty days.  Though the FDCPA requires a creditor to

advise a debtor of his right to dispute a debt within 30 days of receiving the first collection communication, nothing in that statute prohibits a debt collector from demanding immediate payment of an outstanding debt; prohibiting such a demand for immediate payment would inexplicably turn the debtor/creditor relationship upside down when a delinquent debtor refuses to make good on his obligation.

In McStay, which affirmed the district court's grant of summary judgment for the defendant debt collector, the Court observed that the collection letter contained an "ambiguous statement" that might mislead about the right to dispute, but that "any confusion created by the ambiguity on the front of the letter dissipates when read in conjunction with the language on the back."[6] McStay, 308 F.3d at 191 (citing Russell, 74 F.3d at 34). Rather than supporting Plaintiff's argument, McStay requires the conclusion that any ambiguity in the second paragraph of the letter Plaintiff received "dissipates" when read in conjunction with the additional language in the final three paragraphs of the letter. Id.

Neither Plaintiff's first contention that a demand for immediate payment violates the FDCPA, nor Plaintiff's second contention that the collection letter Plaintiff received improperly shortened the 30-day statutory dispute period, is supported by the relevant case law. Even were this letter parsed with microscopic scrutiny, a belief that the least sophisticated consumer would feel harassed, abused, misled or deceived would defy credulity. The Defendant's motion for summary judgment must be granted.

---

[6] The ambiguous statement "Please be advised that if after 30 days your account is not paid in full or otherwise closed, the account information will be forwarded to the National Credit Reporting Agencies," was cured by the statement on the reverse side of the letter that "[u]nless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid." McStay , 308 F.3d at 189.

**III.     Defendant's Application for Attorney's Fees and Costs**

In its motion for summary judgment, Defendant has requested attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3). That section provides that "on a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." The fact that a defendant is entitled to summary judgment does not provide the basis for such a finding; there must be evidence that the Plaintiff both knew that his claim was meritless and pursued it with the purpose of harassing the defendant. See Spira v. Ashwood Financial, Inc., 358 F.Supp.2d 150, 161 (E.D.N.Y.2005) (noting that in addition to succeeding on the merits, defendant must meet the statutory standard of proving bad faith and harassment). See also Sierra v. Foster & Garbus, 48 F.Supp.2d 393, 396 (S.D.N.Y.1999) (awarding defendant's attorney's fees where "[p]laintiff voluntarily abandoned his FDCPA claims once in order to have the case remanded back to state court, then he voluntarily discontinued its prosecution in state court, only to bring it once again in federal court."); Kahen-Kashani v. National Action Financial Services, Inc., 2004 WL 1040384, at *7 (W.D.N.Y. Apr. 12, 2004) (denying claim for attorney's fees under FDCPA where defendant "has not provided evidence of plaintiff's bad faith (as opposed to allegation of plaintiff's counsel's bad faith) . . . and even if this Court wished to attribute counsel's conduct to the client, defendant has not proved the second element, that the suit was instituted for the purpose of harassment").

The Plaintiff acknowledged, by counsel's admissions at argument, see United States v. McKeon, 738 F.2d 26, 30 (2d Cir.1982), the validity of the underlying debt and

13

that he did not feel harassed, threatened or misled by the letter. His mistaken belief that the alleged violation of the statute, arrived at merely by a strained construction of its language, constitutes per se harassment is, in essence, a complaint against the creditor for the temerity of requesting that he pay what he owes. Against this background, the Court grants the Defendant's request for costs and attorney's fees pursuant to 1692k(a)(3). Defendant's counsel is directed to submit the documentation required by New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136 (2d Cir.1983).

SO ORDERED.

Dated: Brooklyn, New York
June 6, 2006.

_____/S/_____

I. Leo Glasser
United States Senior District Judge

Copies of the foregoing memorandum and order were electronically sent to:

Counsel for the Plaintiff

Lawrence Katz
Katz & Kleinman
lkatz@katzandkleinman.com

Counsel for the Defendant

David J. Gold, Esq.
djgpcesq1@aol.com